IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JAY MA CORPORATION, | § | |
| Plaintiff, | § | CIVIL ACTION NO. |
| | § | 3-08-CV-0979-P |
| v. | § | ECF |
| | § | |
| CITY OF DALLAS, and | § | |
| BOARD OF ADJUSTMENT, | § | |
| Defendants. | § | |

**DEFENDANTS' BRIEF IN SUPPORT OF THEIR
MOTION FOR FINAL SUMMARY JUDGMENT**

Respectfully submitted,

CITY ATTORNEY OF THE CITY OF DALLAS

CHRISTOPHER J. CASO
Assistant City Attorney
Texas State Bar No. 03969230
1500 Marilla Street, 7DN
Dallas, Texas 75201
214.670.3519--Telephone
214.670.3515 – Fax

By: s/ *Christopher J. Caso*
    Assistant City Attorney

ATTORNEYS FOR DEFENDANTS CITY OF
DALLAS AND BOARD OF ADJUSTMENT

By: s/ *Christopher J. Caso*

i

## TABLE OF CONTENTS

Table of Authorities ............................................................................................................. iv

I.    Summary of Claims and Defenses ............................................................................ 1

II.   Statement of the Case ................................................................................................ 4

III.  Undisputed Facts ........................................................................................................ 5

IV.   Issues of Law ............................................................................................................... 6

V.  Argument and Authorities ............................................................................................ 7

    A.    Legal standards for summary judgment ........................................................... 7

    B.    Plaintiff has no constitutionally protected property interest ......................... 8

    C.    Municipal liability under 42 U.S.C. § 1983 generally .................................. 11

    D.    Plaintiff has not been injured as a result of an official city policy or custom ............. 12

        1.  Identification of the offending city policy ........................................... 12

            a.   Official municipal policy defined .................................................. 12

        2.  Plaintiff's vague allegations are insufficient ...................................... 12

        3.    There is no evidence of deliberate indifference ................................. 13

        4.  Plaintiff has failed to establish a causal connection between city policy and any alleged constitutional deprivation .................................. 14

        a.  Legal standard:  the city's policy must be the "moving force" behind the alleged deprivation of federal rights ............................................ 14

        b.  City policies alleged by plaintiff were not the moving force behind Plaintiff's alleged constitutional injuries ...................................... 15

    E.    No competent evidence supports plaintiff's takings claims ......................... 16

        1.  State takings claims ............................................................................... 16

        a.  Applicable legal standard .................................................................. 16

        b.  Plaintiff does not and cannot show a physical taking ..................... 18

        c.  Plaintiff does not and cannot show a regulatory taking .................. 18

    d. The phrase "adverse effect" is not unconstitutionally overbroad .................... 20

   2. Federal takings claim .......................................................................... 21

 F. No competent evidence supportsPlaintiff's allegations of discrimination ................. 23

 G. No competent evidence supports Plaintiff's Fourteenth Amendment Due
  Process claims................................................................................................ 26

   1. Applicable legal standard.................................................................... 26

   2. Application to Plaintiff's Procedural Due Process claims..................................... 27

 H. Plaintiff is not entitled to declaratory relief or attorneys fees...................................... 29

   1. Plaintiff has an adequate remedy at law ……………………………………..30

   2. Plaintiff has not met conditions precedent ……………………………………30

   3. Plaintiff's claims for declaratory relief are barred by the doctrine of governmental
    immunity………...........................................................................................31

 I. Plaintiff claim for injunctive relief is moot.............................................................. 31

VI. Conclusion ................................................................................................................ 32

Certificate of service ............................................................................................................ 33

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Liberty Lobby,*
    477 U.S. 242 (1986)..................................................................7

*Bell v. City of Waco,*
    835 S.W.2d 211 (Tex. App. – Waco 1992, writ denied)......................10

*Bd. of Adjustment of the City of San Antonio v. Wende,*
    92 S.W.3d 424 (Tex.2002)................................................................1

*Bd. of Comm'rs of Bryan County v. Brown,*
    520 U.S. 397 (1997) ........................................................14, 15

*Bd. of Regents v. Roth,*
    408 U.S. 564 (1972)........................................................9

*Breen v. Tex. A & M Univ.,*
    485 F.3d 325, 333 (5th Cir.2007)..................................................28

*Bryan v. City of Madison,*
    213 F.3d 267 (5th Cir.2000)........................................................28

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986)..................................................................7, 8

*Chavez v. Illinois State Police,*
    251 F.3d 612 (7th Cir.2001)..................................................25

Cienaga Gardens v. U.S.,
    331 F.3d 1319 (Fed.Cir.2003)..................................................23

*City of Abilene v. Burk Royalty Co.,*
    470 S.W.2d 643 (Tex. 1971)..................................................10

*City of Cleburne, Texas v. Cleburne Living Center, Inc.,*
    473 U.S. 432 (1989)..................................................................24

*City of Farmers Branch v. Hawnco, Inc.,*
    435 S.W.2d 288 (Tex. Civ. App. 1968, writ ref'd n.r.e.)......................19

*City of San Benito v. Ebarb,*
    88 S.W.3d 711 (Tex. App. – Corpus Christi 2002, pet. denied) ...............30

*City of University Park v. Benners*,
    485 S.W.2d 773 (Tex. 1972)…………………………………………………..1, 10, 19

*Cooper v. City of Dallas*,
    2006 Tex. App. LEXIS 818 (Tex. App. Dallas Feb. 1, 2006) (reh'g denied)…………..31

*Duckett v. City of Cedar Park*,
    950 F.2d 272 (5th Cir. 1992)…………..……………………………………………..7

*Little v. Liquid Air Corp.*,
    37 F.3d 1069 (5th Cir. 1994)……………………………………..…………………..7

*Forsyth v. Barr*,
    19 F.3d 1527 (5th Cir. 1994)…………………………………..…………………..7

*General Tire, Inc. v. Kepple*,
    914 S.W.2d 444 (Tex. App. Houston [14th Dist.] 1996, reh'g denied)………………… 21

*Gooding v. Wilson*
    405 U.S. 522 (1972)………………………………………………...……20

*Johnson v. Rodriguez*,
    110 F.3d 299 (5th Cir. 1997)………………………………………………………24

*Lujan v. Nat'l Wildlife Fed'n.*,
    497 U.S. 871 (1990)……………………………………………………………...32

*Hightower v. Texas Hosp. Assn.*,
    65 F.3d 443 (5th Cir. 1995)……………………………………..……………....8

*Jesse White, d/b/a Bill's Salvage Yard v. City of Dallas*,
    517 S.W.2d 344 (Tex. Civ. App. 1974, no writ)………………………………………20

*Lingle v. Chevron U.S.A. Inc.*,
    544 U.S. 528 (2005)…………………………………..……………………...17, 22

*Little v. Liquid Air Corp.*,
    37 F.3d 1069 (5th Cir.1994)……………………………………………………7

*Livadas v. Bradshaw*,
    512 U.S. 107 (1994)……………………………………...…………………8

*Lombardo v. City of Dallas*,
    73 S.W.2d 475 (Tex. 1934)……………………………………..……………9

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555, 560 (1992)......................................................8 ,32

*Lynch Prop. v. Potomac Ins. Co.,*
    140 F.3d 622 (5th Cir.1998)...................................................8

*Matsushita Elec. Indus. Co. v. The Zenith Radio Corp.,*
    475 U.S. 574 (1986)...............................................................8

*Mayhew v. Town of Sunnyvale,*
    964 S.W.2d 922 (Tex. 1998)..............................................18, 19

*McDonald v. City of Corinth,*
    102 F.3d 152 (5th Cir. 1996)..................................................27

*Monell v. Dep't. of Social Servs.,*
    436 U.S. 658 (1978)........................................................11, 14

*Parratt v. Taylor,*
    451 U.S. 527 (1981)..............................................................26

*Penn Central Transportation Co. v. New York City,*
    438 U.S. 104 (1978)...............................................17, 18, 22, 23

*Piotrowski v. City of Houston,*
    237 F.3d 567 (5th Cir. 2001)..................................................11

*Rochin v. California,*
    342 U.S. 165 (1952)..............................................................27

*Rosado v. Deters,*
    5 F.3d 119 (5th Cir. 1993).......................................................8

*Ruckelshaus v. Monsanto Co.,*
    467 U.S. 986 (1984)................................................................9

*Shawgo v. Spradlin,*
    701 F.2d 470 (5th Cir. 1983)...................................................9

*Sheffield Dev. v. City of Glenn Heights,*
    140 S.W.3d 672 (Tex. 2004)...............................................17, 18

*Snyder v. Trepagnier,*
    142 F.3d 791 (5th Cir. 1998).................................................13

*Southern Traffic Bureau v. Thompson,*

232 S.W.2d 742 (Tex. App. 1950) (writ ref'd n.r.e.)............................................30

*Standard Oil Co. v. City of Tallahassee*,
183 F.2d 410 (5th Cir. 1950)....................................................................19

*Stearman v. City of Farmers Branch*,
355 S.W.2d 541 (Tex. Civ. App. 1962, writ ref'd n.r.e.).....................................19

*Taub v. City of Deer Park*,
882 S.W.2d 824 (Tex. 1994) ...............................................................10, 17

*Tex. Educ. Agency v. Leeper*,
893 S.W.2d 432 (Tex. 1994)................................................................31

*Tex. Natural Res. Conservation Comm'n v. IT- Davy*,
74 S.W.3d 849 (Tex. 2002)............................................................29, 31

*Town of Renner v. Wiley*,
458 S.W.2d 516 (Tex. Civ. App. 1970, no writ)...........................................19

*Tubacex, Inc. v. M/V Risan*,
45 F.3d 951 (5th Cir. 1995)...................................................................7

*Washington v. Armstrong World Industries, Inc.*,
839 F.2d 1121 (5th Cir. 1988)...............................................................8

*Webb's Fabulous Pharmacies, Inc. v. Beckwith*,
449 U.S. 155 (1972).......................................................................9, 23

*Webster v. City of Houston*,
735 F.2d 838 (5th Cir. 1984)............................................................12, 14

*West v. Atkins*,
487 U.S. 42 (1988)...........................................................................9

*Westgate Ltd. v. State*,
843 S.W.2d 448 (Tex. 1992).................................................................10

*Whisenhunt v. Spradlin*,
464 U.S. 965 (1983)...........................................................................9

*Williamson County Reg'l Planning Comm'n v. Hamilton Bank*,
473 U.S. 172, 186, 200 (1985)..............................................................22

## STATUTES

42 U.S.C. § 1983 ........................................................................................... seriatim

Tex. Civ. Prac. & Rem. Code Ann. § 37.002 ............................................. 29

## CONSTITUTIONAL PROVISIONS

Texas Constitution, Article 1, Section 17 .................................................. 17

United States Constitution, Fourteenth Amendment ................................. 26

United States Constitution, Fifth Amendment ........................................... 22

## OTHER AUTHORITIES

Dallas Development Code, Section 51A-4.704(a)(1)(A) .................................. seriatim

## RULES

Fed. R. Civ. P. 56(b) ..................................................................................... 1

Fed. R. Civ. P. 56(c). .................................................................................... 7

Fed. R. Civ. P. 56(e) ................................................................................. 7, 8

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JAY MA CORPORATION,<br>Plaintiff, | §<br>§<br>§ | CIVIL ACTION NO.<br>3-08-CV-0979-P |
| v. | §<br>§ | ECF |
| CITY OF DALLAS, and<br>BOARD OF ADJUSTMENT,<br>Defendants. | §<br>§<br>§<br>§ | |

**DEFENDANTS CITY OF DALLAS AND BOARD OF ADJUSTMENT'S
BRIEF IN SUPPORT OF THEIR MOTION FOR FINAL SUMMARY JUDGMENT**

TO THE HONORABLE COURT:

Defendants City of Dallas ("City") and Board of Adjustment ("Board") (collectively referred to as "Defendants"), pursuant to Rule 56(b) of the Federal Rules of Civil Procedure, submit their Brief in Support of Their Motion for Final Summary Judgment.

## I.    SUMMARY OF CLAIMS AND DEFENSES

1.1    This case involves the Board's action in discontinuing the operation of Plaintiff's nonconforming motel (hereinafter "Motel") located at 3103 Colonial Avenue in Dallas, Texas. In such cases, the Board conducts two hearings—the first to determine whether the operation of a nonconforming use[1] was adverse to nearby properties and second, if it is determined that a use is adverse to nearby properties, then a compliance date is established by which the nonconforming use must cease operating. Plaintiff's claims are brought as a result of the Board's April 22, 2008,

---

[1]    The Court's opinion denying Plaintiff's application for temporary restraining order (Doc. 16 at 1), which stated that the Board declared the Motel to be a nonconforming use, is incorrect. A use becomes nonconforming by virtue of the adoption of a zoning amendment by the Dallas City Council which makes a use that was once legal, a nonconforming use, not by an action by the Dallas Board of Adjustment. *See Board of Adjustment of the City of San Antonio v. Wende,* 92 S.W.3d 424, 431 (Tex.2002); *City of University Park v. Benners,* 485 S.W.2d 773, 777 (Tex.1972); (App'x at 70)

determination that the Motel adversely affects the surrounding properties. The Board, which is a quasi-judicial body, set a hearing date of June 24, 2008, to establish a compliance date in accordance with a reasonable amortization period for the Motel to cease operating. At that hearing, the Board set December 31, 2008, as the compliance date for the Motel to cease operating, as well as the date for the Motel's certificate of occupancy revocation. However, Plaintiff's claims are limited solely to the Board's action of April 22nd determining that the Motel adversely affected nearby properties and not as to the date that the Board established for the discontinuance of the Motel use. This Motion, therefore, relates to the Board's April 22nd action.

1.2    Plaintiff filed suit in state district court on May 2, 2008, and the case was removed to federal court on June 10, 2008, based on federal-question jurisdiction. Plaintiff filed two Applications for Temporary Restraining Orders and Preliminary Injunctions with this Court, that were denied on June 24, 2008, and December 31, 2008, respectively.

1.3    In Plaintiff's First Amended Complaint and Request for Writ of Certiorari filed July 7, 2008, Plaintiff alleges that (1) Ms. Monifa Akinwole Bandele and the St. Philip's Parent School Association lacked standing to bring the application, (2) the Board violated Plaintiff's due process rights when it substituted St. Philip's School as the applicant without a reapplication process, (3) the Board violated Plaintiff's right to due process when it refused to give Plaintiff more than one week to procure crime records from the City of Dallas and State of Texas, (4) the Board violated Plaintiff's right to due process at the April 22, 2008, hearing when it denied Plaintiff's motions to continue and dismiss, (5) the Board erred in holding that the Motel is a nonconforming use having an adverse effect on nearby properties, (6) the term "adverse effect" is overly broad and therefore unconstitutional, (7) Defendants discriminated against Plaintiff, and (8) Defendants' actions constituted an unconstitutional taking of Plaintiff's property. Plaintiff

appears to bring its claims pursuant to 42 U.S.C. § 1983 and Chapter 37 of the Texas Civil Practices and Remedies Code, the Texas Uniform Declaratory Judgment Act. Plaintiff seeks compensatory damages from Defendants as well as declaratory relief. Plaintiff additionally sought injunctive relief in Plaintiff's First Amended Complaint and Request for Writ of Certiorari. However, Plaintiff only sought a temporary injunction enjoining the Defendants from holding the Board meeting on June 24, 2008, to determine a reasonable amortization period for the Motel. This request was dispensed with by the Court's June 24, 2008, and December 31, 2008, Orders denying Plaintiff's Application for Temporary Restraining Order and Preliminary Injunction. As such, Plaintiff's request for injunctive relief in its First Amended Complaint has been dispensed with and has now become moot. Plaintiff's declaratory judgment claims are also without merit because under Texas law, governmental immunity protects cities such as Dallas from declaratory judgment suits and because when a party seeks a mature claim, such as a writ of certiorari to appeal a Board's decision under Section 211.011 of the Texas Local Government Code, it cannot also seek a declaratory judgment on the same issues that can be addressed in that proceeding simply to try and obtain attorneys fees.

  1.4  The Board is a quasi-judicial body which made a decision to terminate the nonconforming use and to establish a compliance date for the Plaintiff to recoup its investment in the nonconforming use based upon an application that was submitted by a private party. The provisions of Section 51A-4.704(a)(1)(A) of the Dallas City Code actually *benefit* a property owner because it provides for a public hearing to determine whether the nonconforming use is adverse to nearby properties. Texas law does not require such a hearing—it only requires that a property owner be given a reasonable time to recoup his investment—an issue about which Plaintiff does not complain.

1.5    Defendants have not deprived Plaintiff of its procedural due process rights because they were given notice of and participated in the decision of the Board regarding whether Plaintiff's property was a nonconforming use having an adverse effect on nearby properties. Defendants also deny that they discriminated against Plaintiff.

1.6    Defendants deny Plaintiff's allegations and assert various affirmative defenses, including that there was no constitutional violation, no official City policy was the moving force behind Plaintiff's alleged constitutional injuries, there was no taking of Plaintiff's property, and Plaintiff has not suffered any damages. Plaintiff is also not entitled to injunctive or declaratory relief. Defendants seek a judgment that Plaintiff takes nothing by its claims.

## II.    STATEMENT OF THE CASE

2.1    Plaintiff filed this civil action in state district court on May 2, 2008, alleging federal and state claims arising from Board's determination that Plaintiff's property constituted a non-conforming use having an adverse effect on the community.

2.2    Defendants timely removed this action to this Court on June 10, 2008.

2.3    Plaintiff filed a Motion for Temporary Restraining Order and Request for Preliminary Injunction on June 18, 2008, asking the Court to enjoin Defendants from holding the Board meeting scheduled for June 24, 2008, to determine a reasonable amortization period for Plaintiff's property.

2.4    On June 24, 2008, the Court denied Plaintiff's Motion, ruling Plaintiff "failed to prove its likelihood of success on the merits" and its "substantial threat of irreparable injury."

2.5    Plaintiff filed its First Amended Complaint and Request for Writ of Certiorari on July 7, 2008.

2.6    Plaintiff filed its Application for Temporary Restraining Order on December 19, 2008, and its Reply in Support thereof on December 29, 2008, asking the Court to enjoin

Defendants from enforcing the Board's order requiring Plaintiff to terminate its business operation.

     2.7    On December 31, 2008, the Court again denied Plaintiff's Application for Temporary Restraining Order, ruling that Plaintiff "failed to meet its threshold burden of showing a substantial likelihood of success on the merits."

### III.    UNDISPUTED FACTS

     3.1    The Motel is located at 3103 Colonial Avenue, Dallas, Texas and is owned by Plaintiff, Jay Ma Corporation.  (App'x at 68)

     3.2    The Motel is zoned PD 595 (CC).  (App'x at 68)  PD 595 was adopted by the Dallas City Council on September 26, 2001.  (App'x at 42)

     3.3    The Motel first obtained a certificate of occupancy to operate in 1984.  The Motel contained 29 rooms.  (App'x at 23).

     3.4    On September 30, 1987 the Dallas City Council adopted Ordinance No. 19700 which required that motels containing less than 50 rooms were required to have a specific use permit. (App'x at 28)

     3.3    An application was filed with the City seeking to establish a compliance date for the Motel.  (App'x at 68)

     3.4    On April 4, 2008, the applicant's representative and Plaintiff's representative submitted additional information to the Board  (App'x at 70)

     3.5    On April 15, 2008, the Board conducted a hearing on the application, received additional evidence, heard from citizens and delayed action on the application until April 22, 2008. (App'x at 70, 71)

     3.6    On April 22, 2008, the Board conducted another hearing on the application and determined that the continued operation of the Motel was adverse to the nearby properties and

set a date for the amortization hearing.

## IV. ISSUES OF LAW

4.1     The issues of law presented by this motion are:

A.      whether Plaintiff has identified a specific City policy, practice, or custom that is in violation of the United Stated Constitution;

B.      whether Plaintiff has been injured as the result of an unlawful City policy, custom, or practice;

C.      whether Plaintiff alleged a City policy, practice or custom that was the moving force behind a deprivation of Plaintiff's constitutional rights;

D.      whether the City's policymaker was deliberately indifferent to a known or obvious risk that an official policy City, practice, or custom would probably result in a deprivation of federal rights;

E.      whether the phrase "adverse effect" is unconstitutionally over broad;

F.      whether the City has taken Plaintiff's property;

G.      whether Plaintiff's claim for injunctive relief is moot;

H.      whether Defendants have denied Plaintiff procedural due process;

I.      whether Plaintiffs have been denied their equal protection rights by Defendants;

J.      whether Plaintiff can bring its declaratory injunction claims against Defendants in light of the Defendants' governmental immunity and that Plaintiff has brought a mature cause of action for a writ of certiorari to appeal the Board's decision;

K.      whether Plaintiff has suffered any monetary damages;

L.      whether there exists competent evidence sufficient to raise a genuine issue of material fact regarding Plaintiff's claims.

## V.    ARGUMENT AND AUTHORITIES

### A.    Legal standards for summary judgment

Summary judgment is appropriate:

> . . . if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. [2]

A motion for summary judgment is proper when the pleadings and record taken as a whole demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.[3]  The party moving for summary judgment need not support the motion with affidavits or other evidence negating the nonmovant's claim.  To withstand a motion for summary judgment, the nonmovant must present evidence sufficient to establish the existence of each element of a claim as to which the nonmovant will have the burden of proof at trial.[4]  A movant who does not have the burden of proof at trial must point to the absence of a genuine fact issue.[5]  The burden then shifts to the nonmovant to show that summary judgment is not proper.[6]  The nonmovant must go beyond the pleadings and designate *specific facts* in the record which show that there is a genuine issue of material fact for trial.[7]  The nonmovant must "identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s],"[8] and may not rest on mere conclusory allegations or denials

---

[2] Fed. R. Civ. P. 56(c).

[3] *Anderson v. Liberty Lobby*, 477 U.S. 242, 247 (1986).

[4] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[5] *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995).

[6] *Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992).

[7] *See Celotex*, 477 U.S. at 322; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); Fed. R. Civ. P. 56(e).

[8] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994).

in the pleadings,[9] and is required to present more than "some metaphysical doubt as to the material facts."[10]  All evidence must be viewed in the light most favorable to the party opposing the motion.[11]  However, in the absence of sufficient proof, the Court should not assume that the nonmoving party could or would prove the necessary facts.[12]  Summary judgment is mandatory when a party fails to establish the existence of an essential element of his case on which that party will bear the burden of proof at trial.[13]

**B.      Plaintiff has failed to allege a valid property interest.**

At the heart of each of Plaintiff's is the requirement that it has a constitutionally property interest that has been deprived by Defendants.  Plaintiff has not alleged what property interest it has that has been deprived by the Defendants.  The only conceivable property interest that Plaintiff might have is a property interest to continue operating the Motel as a nonconforming use, because the only thing that the Board did was to terminate Plaintiff's ability to operate the Motel which had been a nonconforming use since 1987.  (App'x at 29, 70).  Defendants did nothing else to affect Plaintiff's property since it can still use its property for all of the other uses that are identified in the PD 595 zoning of the property. (App'x at 49-51, 70)

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States."[14]  It "afford[s] redress for violations of federal statutes, as well as of constitutional

---

[9] Fed R. Civ. P. 56(e); *Lujan v. Nat'l Wildlife Fed'n.*, 497 U.S. 871, 888 (1990); *Hightower v. Texas Hosp. Assn.*, 65 F.3d 443, 447 (5th Cir. 1995).

[10] *Matsushita Elec. Indus. Co. v. The Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[11] *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).

[12] *Lynch Prop. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998).

[13] *Celotex*, 477 U.S. at 322; *Washington v. Armstrong World Industries, Inc.*, 839 F.2d 1121, 1122 (5th Cir. 1988).

[14]        *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994)

norms."[15]  To establish *any* claim under Section 1983, a plaintiff must show:  (1) that defendant

violated a right secured by federal law, and (2) that defendant acted under color of state law.[16]

Defendants acknowledges that they acted under color of state law—the Dallas City Council in

enacting Section 51A-4.704(a)(1)(A) and the Board in conducting the quasi-judicial hearings

involved in this case.  Thus, the question is whether the Defendants violated a right of Plaintiff

that is secured by the takings, due process or equal protection clauses.

Plaintiff alleges the City have deprived it of its property.  For a property owner to

maintain a claim for a taking, due process or equal protection, the property owner must establish

that he has been deprived of a property interest.[17]

Property interests are not created by the U.S. Constitution; instead, they are created and

their dimensions are defined by existing rules of understanding that stem from an independent

source such as state law.[18]  While the existence of a property interest must be decided initially by

reference to state law, federal constitutional law determines whether that interest rises to the

level of an entitlement protected by the constitution. *Shawgo v. Spradlin*, 701 F.2d 470, 475 (5th

Cir. 1983*), cert. denied sub nom. Whisenhunt v. Spradlin*, 464 U.S. 965 (1983).  To have a

protected property interest, a person must have more than an abstract need or desire for it or a

unilateral expectation of it; he must have a legitimate claim of entitlement to it. *Roth*, 408 U.S. at

577.

Thus, the Court must first turn to Texas law to determine whether Plaintiff has a property

interest protected by the due process clause.  In Texas, the fact that a regulation diminishes the

value of a property, by itself, does not establish a taking of property. *Lombardo v. City of Dallas,*

---

[15]    *Id.*
[16]    *West v. Atkins*, 487 U.S. 42, 48 (1988).
[17]    *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1001-04 (1984); *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 161 (1972)
[18]    *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972).

73 S.W.2d 475, 479 (Tex. 1934); *Taub v. City of Deer Park*, 882 S.W.2d 824, 826 (Tex. 1994),

*cert. denied*, 513 U.S. 1112 (1995). Moreover, a taking of property does not occur when the

government merely damages the marketability of property.[19] Furthermore, the possibility or

apprehension that a municipality will rezone a property in the future is not a taking of

property.[20] This is true even if the possibility has decreased the market value of the land.[21] In

addition, "property owners do not acquire a constitutionally protected vested right in property

uses once commenced or in zoning classifications once made."[22] Furthermore, and most

importantly, in *City of University Park v. Benners*, 485 S.W.2d 773 (Tex. 1972), the Texas

Supreme Court held as follows:

> … the required termination of a pre-existing land use, with allowance for
> recoupment, is no different in kind from restrictions upon future land use
> alternatives. So it is concluded that termination does not constitute a 'taking' in
> the eminent domain sense but an exercise of the police power in the public
> interest ..

*Id.* at 777, 778.

The Court in *Benners* added as follows:

> We are in accord with the principle that municipal zoning ordinances requiring
> the termination of nonconforming uses under reasonable conditions are within the
> scope of municipal police power; and that property owners do not acquire a
> constitutionally protected vested right in property uses once commenced or in
> zoning classifications once made. Otherwise, a lawful exercise of the police
> power by the governing body of the City would be precluded.

*Id.* at 778.

Here, the City did not deprive Plaintiff of a constitutionally protected property interest

when it sought to terminate the nonconforming use of the Motel on Plaintiff's property since the

---

[19]     *Westgate Ltd. v. State*, 843 S.W.2d 448, 452 (Tex. 1992); *see also Taub v. City of Deer Park*, 882 S.W.2d
824, 826 (Tex. 1994) ("[p]urchasing and developing real estate carries with it certain financial risks, and it is not the
government's duty to underwrite this risk as an extension of obligations under the takings clause.").

[20]     *See City of Abilene v. Burk Royalty Co.*, 470 S.W.2d 643, 647 (Tex. 1971).

[21]     *Bell v. City of Waco*, 835 S.W.2d 211, 215 (Tex. App. – Waco 1992, writ denied).

[22]     City of Univ. Park v. Benners, 485 S.W.2d 773, 778 (Tex. 1972).

Court in *Benners* has concluded that a property owner in Texas does not have a property right in a nonconforming use. The Property is zoned PD No. 595. There are other uses in that district that Plaintiff is free to undertake such as commercial and business service uses, institutional and community service uses, office, recreational, retail and personal service uses, to name a few (App'x at 70) it just cannot use the property for motel uses.

Since Plaintiff does not have a property right in the nonconforming use, Defendants have not taken their property nor have they deprived them of their due process or equal protection rights. For these reasons, Defendants are entitled to summary judgment on *all* Plaintiff's claims because Defendants' did not deprive Plaintiffs of a property interest.

**C.    Municipal liability under 42 U.S.C. § 1983 generally.**

Under repeated decisions of the Supreme Court and the Fifth Circuit, municipal liability under Section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose moving force is the policy or custom.[23] As stated by the Fifth Circuit,

> [t]he three attribution principles identified here-a policymaker, an official policy and the "moving force" of the policy--are necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself. Mistakes in analyzing section 1983 municipal liability cases frequently begin with a failure to separate the three attribution principles and to consider each in light of relevant case law.[24]

The City will show that Plaintiff cannot establish any of the three elements of municipal liability under the strict standards enunciated by the Supreme Court and the Fifth Circuit.

---

[23] *Piotrowski v. City of Houston*, 237 F.3d 567, 578-579 (5th Cir. 2001) (citing *Monell v. Dep't. of Social Servs.*, 436 U.S. 658, 694 (1978)).

[24] *Id.*

**D.      Plaintiff has not been injured as a result of an official city policy or custom**

    **1.      Identification of the offending city policy**

        **a.      Official municipal policy defined**

To impose liability on the Defendants, Plaintiff must establish the existence of an offending official City policy.  In *Webster v. City of Houston*, the Fifth Circuit defines official policy as:

> 1.  A policy statement, ordinance, regulation, or decision that is by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policymaking authority; or

> 2.  A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy.  Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policymaking authority.[25]

In this case, in response to an interrogatory asking what policies were in effect that allegedly violated Plaintiff's constitutional rights, Plaintiff's answered Dallas City Code Section 4.704(a)(1)(A).[26] (App'x at 10).  While Plaintiff seems to assert that the actions of the Board in conducting the hearing might also be a policy, they fail to identify that there was a persistent and wide-spread practice of, for example, not giving property owners additional extensions of time before the hearings in question.

        **b.      Plaintiff's vague allegations of receiving an unfair hearing are insufficient**

Unconstitutional actions of the City's employees or boards, without more, cannot form the bases of City liability; an official city policy as the moving force behind a constitutional

---

[25] *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984), *reh'g granted in part on other grounds*, 739 F.2d 993 (5th Cir. 1984); *Bennett*, 735 F.2d at 862.

[26] Section 51A-4.704(a)(1)(A).      <u>Request to establish compliance date</u>.  The city council may request that the board of adjustment consider establishing a compliance date for a nonconforming use.  In addition, any person who resides or owns real property in the city may request that the board consider establishing a compliance date

injury is required.  Plaintiff makes vague allusions to violations of due process in claiming it did

not receive a fair hearing.  However, these vague allegations do not serve as sufficient summary

judgment evidence to support an award of damages against Defendants.

**c.    There is no evidence of deliberate indifference**

Plaintiff cannot present any evidence of deliberate indifference sufficient to impose

liability on Defendants.  Facially innocuous policies will support liability only if promulgated

with deliberate indifference to the "known or obvious consequences" that constitutional

violations would result.  As stated by the Supreme Court,

> "a plaintiff seeking to establish municipal liability on the theory that a
> facially lawful municipal action has led an employee to violate a
> Plaintiff's rights must demonstrate that the municipal action was taken
> with 'deliberate indifference' to its known or obvious consequences."[27]

In light of this standard, the Fifth Circuit has noted that "[d]eliberate indifference of this sort is a

stringent test, and 'a showing of simple or even heightened negligence will not suffice' to prove

municipal culpability."[28]  The Fifth Circuit has been particularly attendant to the standards set by

the Supreme Court.  In *Snyder v. Trepagnier*, the Fifth Circuit summarized the relevant

standards, and admonished that:

> "*Bryan County* underscores the need for *Monell* plaintiffs to establish both
> the causal link ('moving force') and the City degree of culpability
> ('deliberate indifference' to federally protected rights).  These require-
> ments must not be diluted, for '[w]here a court fails to adhere to rigorous
> requirements of culpability and causation, municipal liability collapses
> into *respondeat superior* liability."[29]

In this context, Plaintiff's allegations of violations of due process and equal protection

because it allegedly received an unfair hearing fall woefully short the "deliberate indifference"

---

[27] *Bryan County*, 520 U.S. at 407.

[28] *Piotrowski*, 237 F.3d at 579 (quoting *Bryan County*, 520 U.S. at 407).

[29] *Snyder v. Trepagnier*, 142 F.3d 791, 796 (5th Cir. 1998) (citing *Bryan County*, 520 U.S. at 410).

necessary to attach municipal liability. Furthermore, a plaintiff seeking to establish an official policy on the basis of an informal but "persistent, widespread practice of city officials or employees" must also make a showing of the existence of actual or constructive knowledge on the part of the government body or officials to whom the body has delegated policymaking authority.[30]

Plaintiff's vague and at times incomprehensible allegations against the City are at best conclusory and fail entirely to present any set of facts which would establish that the Dallas City Council or some official, if any, to whom it has delegated policymaking authority: (1) adopted a constitutionally defective policy regarding the amortization of a nonconforming use adversely affecting the nearby properties or (2) failed to implement such a policy or knowingly acceded to a existing persistent custom or practice of enforcing the amortization provisions of a nonconforming use adversely affecting the community by making a deliberate and conscious decision to ignore the rights of persons with whom those City employees would come into contact. Furthermore, Plaintiff can present no credible, competent evidence that the City Council was aware of the offending custom, which knowledge is an essential component of deliberate indifference.

### 4.    Plaintiff has failed to establish a causal connection between city policy and any alleged constitutional deprivation

Plaintiff must establish a causal connection between the alleged policy defect and the alleged deprivation of federal rights, should it even be able to establish an official policy.

### a.    Legal standard: the City's policy must be the "moving force" behind the alleged deprivation of federal rights

In addition to identifying an unconstitutional municipal policy, a plaintiff must also

---

[30] *Webster*, 735 F.2d at 838; *Monell*, 436 U.S. at 694.

Defendants' Brief in Support of Their Motion for Final Summary Judgment          Page 14

establish that there existed an identifiable causal connection between that policy and the asserted constitutional deprivation.[31]  The Supreme Court established the standard by which liability may be imposed against a municipality in a § 1983 action in *Bd. of Comm'rs of Bryan County v. Brown*.[32]  In *Bryan County*, the Court reiterated that "[i]n enacting § 1983, Congress did not intend to impose liability on a municipality unless deliberate action attributable to the municipality itself is the 'moving force' behind the Plaintiff's deprivation of federal rights."[33] The Court was concerned that failure to adhere to the rigorous requirements of culpability and causation in a municipal § 1983 case would cause policy-based liability to collapse into *respondeat superior* liability.  The Court said that to prevent such an occurrence, "a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged."[34]

> **b.    City policies alleged by plaintiff were not the moving force behind Plaintiff's alleged constitutional injuries**

Plaintiff has failed to show that any actions on the Defendants part were the "moving force" behind Plaintiff's alleged alleged injuries.  Plaintiff's inability to establish a causal connection is fatal to its constitutional claims against Defendants.  The Board held a public hearing on April 15, 2008, which was continued at the Plaintiff's request to April 22, 2008, wherein it determined that Plaintiff's Motel constituted a nonconforming use having an adverse effect on nearby properties.  Plaintiff was both notified of and participated in the hearings and was represented by legal counsel at those hearings. The mere fact that the Board, a quasi-judicial body, made a decision, within its statutorily prescribed discretion, that Plaintiff disagrees with

---

[31] *Bennett*, 728 F.2d at 767.

[32] *Bd. of Comm'rs of Bryan County v. Brown*, 520 U.S. 397 (1997).

[33] *Bryan County.*, 520 U.S. at 400 (citing *Monell*, 436 U.S. at 694).

[34] *Id.* at 404.

does not establish that Defendants caused Plaintiff constitutional injuries.

As the Court observed when it denied Plaintiff's second application for temporary restraining order:

> The Board found 'Number 1, that the nonconforming use of the [Motel] no longer suits the character of the surrounding neighborhood … [and] Number 2, that the Motel is operating in a manner that may threaten public health and safety and create or perpetuate public disturbance by the continued operation of its use.' (Mot. App. 318)  Each of these conclusions were supported by explicit findings of fact based on record evidence.  (*See id.* at 318, 320).

(Doc. 31 at 5)

The Court's review of the record of the Board correctly acknowledges that there was no constitutional violation by Defendants when the Board considered whether to discontinue the nonconforming use that had continued for more than 20 years.  (Doc. 29 at 65)  The Court also found that the Plaintiff's actions were adverse to nearby properties when it stated:

> Moreover, the Board made findings of fact that activities which occurred on or near the motel, such as criminal activity, public nuisance, disturbances, renting on an hourly basis, and sale of condoms led to adverse effects on the community. (Mot. App. 318-20)

(Doc. 31 at 6)

A review of the record clearly shows that Defendants, therefore, were not the moving force in any alleged unconstitutional action asserted by Plaintiff.

Because Plaintiff cannot establish any of the three attribution factors required to establish *Monell* liability, the Defendants are entitled to summary judgment as to all of Plaintiff's section 1983 claims alleging violations of due process and equal protection.

**E.    No competent evidence supports Plaintiff's takings claims**

**1.    State takings claim**

**a.    Applicable legal standard**

Plaintiff has alleged in its First Amended Complaint that it suffered an unconstitutional taking because the phrase "adverse effect" is overly broad. While it is unclear from Plaintiff's pleading whether Plaintiff is alleging a state or federal takings claim, Defendants will address both. The Texas Constitution, Article I, section 17 provides in part: "[N]o person's property shall be taken, damaged or destroyed or applied to public use without adequate compensation being made . . . ." A regulatory taking can occur by means of a governmental restriction that constitutes an unreasonable interference with the use and enjoyment of property.[35] In situations other than the physical appropriation or occupation of real property, a court must analyze the nature of the government's actions to determine whether property has, in fact, been taken within the meaning of Article I, Section 17.[36]

A regulation constitutes a *per se* taking only if it either results in a "physical invasion" of private property or denies the owner "all economically beneficial or productive use of [the] land," leaving the owner with only "a token interest."[37] In *Lingle*, the United States Supreme Court categorized two kinds of regulations as generally being regulatory takings *per se*: (1) a requirement that the owner suffer a permanent physical invasion of the owner's property; and (2) a rule that deprives an owner of "*all* economically beneficial uses" of the owner's property."[38] The *Lingle* Court concluded that "[o]utside these two relatively narrow categories," regulatory taking challenges are governed by the standards set forth in *Penn Central*

---

[35] *Taub v. City of Deer Park*, 882 S.W.2d 824, 826 (Tex. 1994).

[36] *Sheffield Dev. v. City of Glenn Heights*, 140 S.W.3d 672 (Tex. 2004) (holding that a determination whether a nonphysical taking has occurred requires "a fact-sensitive test of reasonableness"); *see also Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 538 (2005) (holding that apart from permanent physical invasion of property or "total regulatory taking," the court must carefully analyze the nature of the government's actions to determine whether a taking has occurred).

[37] *Sheffield*, 140 S.W.3d at 670.

[38] *Lingle*, 544 U.S. at 538 (citing *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982) and quoting *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1019 (1992)).

*Transportation Co. v. New York City.*[39] In determining whether a regulatory taking has occurred under the *Penn Central* standards, a court considers (1) "the economic impact of the regulation on the claimant"; (2) "the extent to which the regulation has interfered with distinct investment-backed expectations"; and (3) "the character of the governmental action."[40]

### b.    Plaintiff does not and cannot show a physical taking

Plaintiff attempts to show that Defendants have taken, damaged, or destroyed its alleged property interest due to the Board's determination that Plaintiff's nonconforming property has an adverse effect on the surrounding properties.  Taking all the facts pleaded by Plaintiff as true, they demonstrate that the Board's determination does not physically appropriate, invade, damage, or destroy any of Plaintiff's real or personal property.  Therefore, Plaintiff has failed to plead, and cannot plead, a valid cause of action for a *physical* taking of, damage to, or destruction of property.  If there has been a taking at all, it must be a regulatory taking.

### c.    Plaintiff does not and cannot show a regulatory taking

The regulation Plaintiff appears to be challenging is Section 51A-4.704(a)(1)(A) of the Dallas City Code which states in part, "If, based on the evidence presented at the public hearing, the board determines that continued operation of the use will have an adverse effect on nearby properties, it shall proceed to establish a compliance date for the nonconforming use; otherwise, it shall not."  A regulatory taking can occur when a government imposes restrictions that unreasonably interfere with the owner's rights to use and enjoy property.[41]  In assessing whether Defendants have unreasonably interfered with Plaintiff's rights to use and enjoy property, the Court must consider the economic impact of the regulation and the extent to which the regulation

---

[39] *See Id.*, discussing *Penn Central Transportation Co. v. New York City*, 438 U.S. 104 (1978).

[40] *Sheffield*, 140 S.W.3d at 672 (citing *Connolly v. Pension Benefits Guar. Corp.*, 475 U.S. 211, 225 (1986) and quoting *Penn Central*, 438 U.S. at 124).

[41] *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 935 (Tex. 1998).

interferes with distinct investment-backed expectations.[42]  These expectations are critical to the analysis and distinguish this concept from situations where the property has been rendered valueless.[43]  The expectations of an owner are shaped by the existing and permitted uses of the property, and the requirements of law.[44]

Since the law in Texas for decades has been that a person does not have a property interest in the zoning of land, and, more importantly for this case, that he also does not have a continued right to operate a nonconforming use, the policy in Texas being that eventually all nonconforming uses should be terminated, Plaintiff could not have a reasonable investment backed expectation that it would continue to be able to operate the nonconforming use.  Plaintiff acquired this property after it became a nonconforming use so it clearly cannot be heard to say that its investment backed expectation was that it could continue to operate a nonconforming use.

Furthermore, Plaintiff has not even identified what property right has allegedly been taken by Defendants.  Additionally, "municipal zoning ordinances requiring the termination of nonconforming uses under reasonable conditions are within the scope of municipal police power...[P]roperty owners do not acquire a constitutionally protected vested right in property uses once commenced or in zoning classifications once made.  Otherwise, a lawful exercise of the police power by the governing body of the City would be precluded."[45]  Additionally, "[i]t is now definitely established in Texas that municipal zoning ordinances which reasonably require

---

[42] *Mayhew*, 964 S.W.2d at 937.

[43] *Id.*

[44] *Id.* at 936.

[45] *City of University Park v. Benners*, 485 S.W.2d 773, 778 (Tex. 1972) (citing *City of McAllen v. Morris*, 217 S.W.2d 875 (Tex. Civ. App. 1948, writ ref'd); *City of Farmers Branch v. Hawnco, Inc.*, 435 S.W.2d 288 (Tex. Civ. App. 1968, writ ref'd n.r.e.); *Stearman v. City of Farmers Branch*, 355 S.W.2d 541 (Tex. Civ. App. 1962, writ ref'd n.r.e.); *Town of Renner v. Wiley*, 458 S.W.2d 516 (Tex. Civ. App. 1970, no writ); *Standard Oil Co. v. City of Tallahassee*, 183 F.2d 410 (5th Cir. 1950)).

the discontinuance of nonconforming uses are constitutional."[46]  Therefore, Plaintiff can present

no evidence that Defendants have unreasonably interfered with Plaintiff's right to use and enjoy

its property and as such, Plaintiff's claims must fail and should be dismissed with prejudice.

> **d.    The phrase "adverse effect" in Section 51A-4.704(a)(1)(A) is not unconstitutionally overbroad**

Plaintiff's complaint seeks a declaration that the provisions of section 51A-

4.704(a)(1)(A) of the Dallas City Code which provides that a use could be nonconforming

because of an alleged adverse effect on nearby properties is overly broad.  Plaintiff's assertions

are incorrect in that a use is considered nonconforming not because it is adverse to nearby

properties, but because the Dallas City Council adopted a rezoning of property that made the use

nonconforming.

However, to the extent that Plaintiff is asserting that the provisions in section 51A-

4.704(a)(1)(A) of the Dallas City Code are overly broad, these allegations allegations are without

merit.  The Court, in its December 31, 2008, Order which denied Plaintiff's Application for

Temporary Restraining Order, addressed Plaintiff's argument that the phrase "adverse effect was

overly broad when it held that while "adverse effect" is not defined in the Dallas City Code, "the

Code does provide a list of factors that the Board is to consider in determining whether a

property has an adverse effect."  The list of factors that the Board was to consider cured any

alleged overbreadth in the City's ordinance.

Typically, statutes are considered overly broad in criminal context or when they implicate

the First Amendment if the terms of the challenged statute are broad enough to suppress

protected speech.  *Gooding v. Wilson*, 405 U.S. 522, (1972).  However, Plaintiff does not assert

---

[46] *Jesse White, d/b/a Bill's Salvage Yard v. City of Dallas*, 517 S.W.2d 344, 349 (Tex. Civ. App. 1974, no writ).

that Plaintiff's First Amendment rights are being violated because of the alleged overbreadth of section 51A-4.704(a)(1)(A).

Additionally, Jay Ma itself, in its Reply in Support of its Application for Temporary Restraining Order, stated, "As a matter of plain English, the phrase "adverse effect" means that the conditions of the subject property are proximately causing the nearby neighborhood to suffer." If Plaintiff can define "adverse effect" using plain English, it cannot also claim that the phrase is unconstitutionally over broad. Moreover, the phrase "probable adverse effect" appears in Rule 76a of the Texas Rules of Civil Procedure and was challenged on constitutional grounds in *General Tire, Inc. v. Kepple*.[47] The court held that the phrase was not unconstitutionally vague.[48] Accordingly, Plaintiff's allegations fail as a matter of law and should be dismissed with prejudice.

### 2.    Federal takings claim

Plaintiff's complaint seeks a declaration that the provisions of section 51A-4.704(a)(1)(A) of the Dallas City Code which provides that a nonconforming use may be required to discontinue when it has adverse effect on nearby properties results in a taking of property. Plaintiff's assertions are incorrect in that a use is considered nonconforming not because it is adverse to nearby properties, but because the Dallas City Council adopted a rezoning of property that made the use nonconforming. What the Board did in this case was to terminate the nonconforming use since it adversely affected nearby properties.

However, to the extent that Plaintiff is arguing that the Board's action in terminating the nonconforming use amounts to a taking of property, this claim fails because there are no material facts in dispute in Defendants are entitled to judgment as a matter of law. A claim under the Just

---

[47] *General Tire, Inc. v. Kepple*, 914 S.W.2d 444, 454 (Tex. App. Houston [14th Dist.] 1996, reh'g denied).

[48] *Id*. at 454.

Compensation Clause of the Fifth Amendment is not ripe for federal judicial review until the plaintiff has sought compensation under state law and been denied. *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 186, 200 (1985). Since Plaintiff has not yet sought that relief, the Court should dismiss its taking claim.

The Takings Clause of the Fifth Amendment prohibits the taking of private property for public use, without just compensation. U.S. CONST. amend. V; *see also Chicago, B. & Q.R. Co. v. City of Chicago,* 166 U.S. 226 (1897) (incorporating the Takings Clause against the States through the Fourteenth Amendment). Since Plaintiff does not allege a permanent physical invasion or a total regulatory taking of its property, the question of whether a taking occurred turns upon the standards set forth in *Penn Central Transportation Company v. City of New York,* 438 U.S. 104 (1978), and its progeny. *Lingle v. Chevron U.S.A. Inc., 544 U.S. 528 (2005).* The Supreme Court in *Penn Central* recognized that the inquiry is "essentially ad hoc," but identified "several factors that have particular significance." *Penn Central,* 438 U.S. at 124; *accord Lingle,* 544 U.S. at 538-39 (the factors aim to identify those regulatory actions that "are functionally equivalent to the classic taking in which government directly appropriates private property or ousts the owner from his domain."). The factors include "the economic impact of the regulation on the claimant," "the extent to which the regulation has interfered with distinct investment-backed expectations," and "the character of the governmental action." *Penn Central,* 438 U.S. at 124. Finally, "the *Penn Central* inquiry turns in large part, albeit not exclusively, upon the magnitude of a regulation's economic impact and the degree to which it interferes with legitimate property interests." *Lingle,* 544 U.S. at 538.

Plaintiff has asserted that "Jay Ma Corporation has not made a claim for economic damages" in its Initial Disclosures (App'x at 5) despite seeking damages in its petition. It has

not submitted an expert who will testify as to a loss in market value of the property as a result of the Defendants' actions nor has it produced any documents to support such alleged damages. Therefore, plaintiff has nothing to show that it has suffered any economic damages. Furthermore, there are a variety of other uses that could be made of the property as addressed above. Accordingly, the economic impact of the challenged actions on Plaintiffs' nearby property is at most speculative and marginal.

The second *Penn Central* factor also weighs against the finding of a taking. An investment-backed expectation "must be more than a 'unilateral expectation or an abstract need." *Ruckelshaus v. Monsanto Co.,* 467 U.S. 986 (1984) (quoting *Webb's Fabulous Pharmacies, Inc. v. Beckwith,* 449 U.S. 155, 161, 101 S.Ct. 446, 66 L.Ed.2d 358 (1980)). It must be objectively reasonable. *Cienaga Gardens v. United States,* 331 F.3d 1319, 1345-46 (Fed.Cir.2003). Plaintiff cannot argue that its investment backed expectation has been diminished because it does not have such an expectation in a nonconforming use. Plaintiffs should have anticipated, to properly adjudge the reasonableness of their expectations. *Cienaga Gardens,* 331 F.3d at 1346.

Consideration of the third *Penn Central* factor yields the same result as the preceding two. The challenged action in this case is the discontinuation of a nonconforming use, wherein it is the stated purpose in Texas that nonconforming uses should be terminated. (App'x at 18) The Board heard testimony from numerous members of the public, in oral and written form, that the Motel use was adverse to nearby properties. The protection of the public health, safety and welfare is of the utmost importance to a city justifying the termination of the use of Plaintiff's property for a motel.

**F.     No competent evidence supports Plaintiff's allegations of discrimination**

While it is difficult to discern from Plaintiff's Complaint under what authority Plaintiff is alleging discrimination, Plaintiff contends that "[o]ther similarly situated property owners have

not been targeted for any such enforcement, but Defendants have chosen to assist a neighboring property owner in its efforts to acquire Plaintiff's land through the selected enforcement of this provision of the Dallas City Code." Plaintiff may be alleging a violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. If so, Plaintiff has failed to allege an official policy that was the moving force behind that deprivation of rights. That is, Plaintiff has not identified *any* City policy of discrimination, except the raw allegation stated above. Clearly, that conclusory allegation is insufficient as a matter of law to state a *Monell* claim. Nonetheless, even assuming that Plaintiff sufficiently plead an offending City policy, Plaintiff still cannot produce any competent evidence in support of that allegation.

The Equal Protection Clause requires that all persons similarly situated be treated alike.[49] In order to establish a violation of equal protection, a plaintiff must show "'the existence of purposeful discrimination' motivating the state action which caused the complained-of injury."[50] Despite this clear-cut requirement, Plaintiff can produce no competent evidence of *intentional* discrimination against Plaintiff. Certainly, Plaintiff can point to no officially adopted and promulgated policy statement, ordinance, regulation, or decision by the City Council, or any City official that permits, much less directs, discrimination in connection with the amortization of a property constituting a nonconforming use having an adverse effect on nearby properties. Plaintiff can produce no competent evidence of *purposeful* discrimination by Defendants, and any discriminatory conduct by an individual City employee that is not sanctioned by official City policy cannot impose *respondeat superior* liability on the Defendants. Furthermore, Plaintiff points to no other similarly situated person who is being treated differently than Plaintiff.

---

[49] *See City of Cleburne, Texas v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1989).

[50] *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997) (quoting *McCleskey v. Kemp*, 481 U.S. 279, 292-93 (1987)).

Additionally, the Board is a quasi-judicial body that considers each case that comes before it on its own merits.  Plaintiff has pointed to nothing in the record of the Board's decision or in any other materials that the Board or the City discriminated against Plaintiff.  Furthermore, a corporation such as Plaintiff does not have a race or ethnicity, so it is difficult to determine how Defendants could have discriminated against it on that basis.

Plaintiff also attempts to allege a selective enforcement claim wherein it alleges that Defendants have selectively enforced Section 51A-4.704(a)(1)(A) of the Dallas City Code to assist a neighboring property owner to acquire Plaintiff's property.  (1st Am. Compl. at 4)  The Equal Protection Clause prohibits race-based selective enforcement of the law only when such enforcement has a discriminatory effect and is motivated by a discriminatory purpose. To show a violation of the Equal Protection Clause, a claimant must prove that the actions involved had a discriminatory effect and were motivated by a discriminatory purpose. *Chavez v. Illinois State Police*, 251 F.3d 612, 635-36 (7th Cir.2001). To prove discriminatory effect, the claimants are required to show that they are members of a protected class, that they are otherwise similarly situated to members of the unprotected class, and that they were treated differently from members of the unprotected class. *Chavez*, 251 F.3d at 636.  A party may show that he was similarly situated yet treated differently by identifying individuals who received disparate treatment or by using statistics to demonstrate a significant disparity. *Chavez*, 251 F.3d at 636. When statistics are introduced, they must address the issue of whether one class is being treated differently than others similarly situated. *Chavez*, 251 F.3d at 638.

Plaintiff has failed to show that by virtue of a private citizen filing an application with Board to discontinue a nonconforming use that Defendants action had a discriminatory effect on Plaintiff or that Defendants were motivated by a discriminatory purpose to discontinue a

nonconforming use that the courts in Texas have consistently held should be discontinued. Plaintiff, a corporate entity, has also failed to either allege or show that it is a member of a protected class. It has failed to allege or show that there are other similarly situated individuals or that it was treated differently from members of the unprotected class.

Plaintiff cannot provide any competent summary judgment evidence in support of its allegations of discrimination. Factually, there is no evidence at all of intentional, purposeful discrimination. Further, there is no competent evidence to establish proof of a widespread pattern or custom of unlawful discrimination that was known to the City's policymaker. Therefore, Defendants are entitled to summary judgment as to Plaintiff's claim of discrimination.

**G.      No competent evidence supports Plaintiff's Fourteenth Amendment Due Process claims**

Without further specification, Plaintiff alleges that "Defendant[']s actions in the way it conducted its proceedings violated Plaintiff's rights to due process of law," and Plaintiff has asked the Court to rule that it was "denied its procedural due process rights because it did not receive a fair hearing." The controlling law compels the conclusion that Plaintiff's procedural due process claim cannot succeed.

**1.      Applicable legal standard**

The Due Process Clause of the Fourteenth Amendment provides: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law."[51] As the Supreme Court decision in *Parratt v. Taylor*,[52] noted, the Fourteenth Amendment only protects against deprivations "without due process of law". It almost begs the question of whether an action by a quasi-judicial body, which acts similar to a court, could deprive someone of procedural due

---

[51] United States Constitution, Fourteenth Amendment.

[52] *Parratt v. Taylor*, 451 U.S. 527 (1981).

process, the facts in this case clearly show that there was no such deprivation.

The essential requirements of procedural due process are notice and an opportunity to respond. *McDonald v. City of Corinth,* 102 F.3d 152, 155 (5th Cir.1996). Plaintiff has not been denied due process of law since it was notified by Defendants that an application had been filed to determine whether the nonconforming Motel was adverse to neighboring properties and, if so, establishing a date by which the Motel must cease operating. Plaintiff attended three separate hearings, was represented by counsel, had the right to call witnesses of its own, introduce evidence and cross-examine the applicant's witnesses, all in accordance with the procedures established by the State of Texas and the City. The record of the Board action, both with respect to the documents introduced by Plaintiff and the testimony and cross-examination of witnesses clearly show that Plaintiff was afforded sufficient procedural due process since he was notified of the hearing and had an opportunity to respond.

### 2. Application to Plaintiff's Procedural Due Process claims

Plaintiff must meet the three attribution principles of (1) a policymaker, (2) an official policy, and (3) an actual causal link to the injury alleged. "The touchstone of due process is protection of the individual against arbitrary action of government."[53] Procedural due process requires the government to follow appropriate procedures when its agents decide to deprive a person of life, liberty, or property.[54] However, Plaintiff's conclusory allegation fails to identify what arbitrary action of City government deprived it of *procedural* due process; that is, the manner in which the City's exercise of governmental authority in the exercise of its police powers deprived Plaintiff of a Constitutional right. Even with that being the case, Plaintiff, by its own admission, was afforded all the due process it was due. "The essential requirements of due

---

[53] *Parratt,* 541 U.S. at 549 (internal citations omitted).

[54] *Rochin v. California,* 342 U.S. 165 (1952).

process are notice and an opportunity to respond."[55]   In the case at hand, it is undisputed that Plaintiff received notice of and participated in the April 15, 2008 and April 22, 2008 hearings on whether Plaintiff's property constituted a nonconforming use having an adverse effect on nearby properties.   Plaintiff was also represented by legal counsel at those hearings.   Defendants, therefore, met all due process requirements, and Plaintiff's allegation of a violation of procedural due process must fail.

Additionally, the principal element of a claim alleging denial of due process by means of the deprivation of a property right[56] is the existence of some constitutionally protected property right.   *Bryan v. City of Madison,* 213 F.3d 267, 274-75 (5th Cir.2000).   Plaintiff has failed to allege, and cannot allege or shoe, that it has a constitutionally protected property right.   A person does not have a property right in the zoning of his property nor does he have a property right in a nonconforming use.   *See, Benners, supra.*   Since Plaintiff has no protected property right, it cannot claim a violation of the due process clause.

While Plaintiff has not specifically alleged a violation of substantive due process, such a claim is likewise without merit.   In order to violate substantive due process an action of the government must be arbitrary or conscience-shocking.   *See Breen v. Tex. A & M Univ.,* 485 F.3d 325, 333 (5th Cir.2007).   The Board held several hearings on whether the Motel adversely affected nearby properties—it heard from numerous witness who were concerened about prostitution, drug use and other crimes at or near the Motel, as well as crime reports reflecting such criminal activity. The Board, a quasi-judicial body, considered that evidence and concluded that the operation of the Motel was adverse to nearby properties.   Nothing in that action would

---

[55] *McDonald v. City of Corinth*, 102 F.3d 152, 155 (5th Cir. 1996) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 547 (1985)).

[56]   Plaintiff has not alleged a deprivation of a liberty interest.

show that the Board's actions were arbitrary or conscience-shocking.

**H.     Plaintiff is not entitled to declaratory relief or attorneys fees**

Plaintiff has additionally sought declaratory relief under Chapter 37 of the Texas Civil Practice and Remedies Code, which is the Texas Declaratory Judgment Act.  Plaintiff asks the Court to declare that (1) the Board's April 22, 2008, ruling is inconsistent with City Development Code Sections 51A-4.704(a)(1)(A) and 51A-2.102(111); (2) find that Plaintiff's property is not a nonconforming use adverse to the neighboring properties; (3) that Section 51A-4.704(a)(1)(A) is unconstitutional in that it is overly broad, denies Plaintiff's due process and due course of law rights as a pre-existing use, and constitutes and unconstitutional taking; (4) that Defendants discriminated against Plaintiff in their enforcement of Section 51A-4.704(a)(1)(A). Defendants assert that Plaintiff is not permitted to seek a declaratory judgment when it has asserted a claim for damages.

The purpose of the Texas Declaratory Judgment Act is "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations . . . ."[57]  A person affected by a statute "may have determined any question of construction or validity arising under the . . . statute . . . and obtain a declaration of rights, status, or other legal relations thereunder."[58]  A party generally can maintain a suit to determine its rights without legislative permission because such suits are not considered "suits against the State" for purposes of sovereign immunity.[59]  However, a party cannot circumvent the state's sovereign immunity from

---

[57] Tex. Civ. Prac. & Rem. Code § 37.002.

[58] *Id.* at § 37.004.

[59] *See Tex. Natural Res. Conservation Comm'n v. IT- Davy*, 74 S.W.3d 849, 855 (Tex. 2002).

suit by characterizing a suit for money damages as a declaratory judgment action.[60]  If the suit

attempts to subject the state to liability, the sovereign immunity doctrine is implicated.[61]

      1.      **Plaintiff has an adequate remedy at law**

Plaintiff is requesting that the Court declare that the Board's April 22, 2008, ruling is

inconsistent with City Development Code Sections 51A-4.704(a)(1)(A) and 51A-2.102(111) and

find that Plaintiff's property is not a nonconforming use adverse to the neighboring properties.

Through this request, Plaintiff is essentially asking the Court to reverse the April 22, 2008,

decision of the Board.  However, "[i]f adequate relief, and an appropriate remedy, are presently

available to the complaining party through the means of other existing forms of action or

proceeding, jurisdiction for a declaratory judgment will not be entertained.  If such relief is

presently available, parties will be left to their appropriate actions provided by law rather than

permit a resort to the declaratory judgment proceeding."[62]  In the present case, Plaintiff has,

through a Writ of Certiorari, asked the Court to overturn the Board's April 22, 2008, decision

finding Plaintiff's property constituted a nonconforming use having an adverse effect on nearby

properties on the grounds that it is "contrary to the provisions of City Development Code

Sections 51A-4.704(a)(1)(A) and 51A-2.102(111)."  As such, Plaintiff's identical declaratory

relief claims on these grounds must fail.

      2.      **Plaintiff has not met conditions precedent**

With respect to Plaintiff seeking a declaration that "Section 51A-4.704(a)(1)(A) is

unconstitutional in that it is overly broad, denies Plaintiff's due process and due course of law

---

[60] *IT-Davy*, 74 S.W.3d at 856.

[61] *See Id.*; *see also City of San Benito v. Ebarb*, 88 S.W.3d 711, 721 (Tex.  App. - Corpus Christi 2002, pet. denied) ("A suit which is brought ostensibly for the purpose of declaring rights, but actually seeks to impose liability on the State for damages, is a suit against the State barred by sovereign immunity").

[62] *Southern Traffic Bureau v. Thompson*, 232 S.W.2d 742, 750 (Tex. App. 1950) (writ ref'd n.r.e.) (quoting *Bagwell v. Woodward Iron Co.*, 184 So. 692, 693 (Ala. 1938)).

rights as a pre-existing use, and constitutes and unconstitutional taking," Plaintiff has not met the conditions precedent for bringing this claim. "[I]f a statute, ordinance, or franchise is alleged to be unconstitutional, the attorney general must be served with a copy of the proceeding and is entitled to be heard."[63]  It is undisputed that Plaintiff has not served the attorney general with a copy of this proceeding, and as such, this allegation must fail.

### 3.    Plaintiff's allegations are barred by the doctrine of governmental immunity

Plaintiff is also asking the Court to declare that Defendants discriminated against Plaintiff in their enforcement of Section 51A-4.704(a)(1)(A).  However, Plaintiff has not alleged, with respect to this allegation, that the Board acted outside the scope of its authority.[64]  Therefore, this is not a request for the Court to construe the City ordinance,[65] but rather is an attempt to impose liability on Defendants for damages, which it is prohibited from doing by the doctrine of sovereign immunity, as outlined above.[66]

For the reasons set forth above, the Court must deny Plaintiff's request for declaratory relief in its entirety.

### I.    Plaintiff's claim for injunctive relief is moot.

Plaintiff has sought to enjoin the Defendants from conducting the amortization hearing that was scheduled for June 24, 2008 to determine a reasonable amortization period.  Since this Court refused to enjoin the conduct of that hearing, and since the hearing has already been held—there is nothing to enjoin.  Under Article III of the U.S. Constitution, Courts should only

---

[63] *Texas Educ. Agency v. Leeper*, 893 S.W.2d 432, 446 (Tex. 1994) (citing Tex. Civ. Prac. & Rem. Code § 37.006(b)).

[64] *See Cooper v. City of Dallas*, 2006 Tex. App. LEXIS 818 *8 (Tex. App. Dallas Feb. 1, 2006) (reh'g denied).

[65] *See Cooper*, 2006 Tex. App. LEXIS 818 at *8.

[66] *See IT-Davy*, 74 S.W.3d at 856; *see also Ebarb*, 88 S.W.3d at 721.

hear live controversies. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Since Plaintiff's injunction claim is not live, it should be dismissed.

## VI.    CONCLUSION

Defendants have established that even accepting Plaintiff's allegations as true, their claims against them fail as a matter of law, and that Defendants are entitled to summary judgment as to all of Plaintiff's claims. Summary judgment should be granted to Defendants as to all of Plaintiff's claims against them.

WHEREFORE, PREMISES CONSIDERED, Defendants pray that this motion be granted, that this action be dismissed against them, that Plaintiff take nothing by this suit, that all relief requested by Plaintiff be denied; that they recover from Plaintiff a reasonable attorney's fee and all costs of suit, and for such other and further relief to which they are justly entitled.

Respectfully submitted,

CITY ATTORNEY OF THE CITY OF DALLAS

By ___/s/ Christopher J. Caso_____
    CHRISTOPHER J. CASO, AICP
    Texas State Bar No. 03969230
    Assistant City Attorneys
    7DN Dallas City Hall
    1500 Marilla Street
    Dallas, Texas 75201
    Telephone – 214-670-3519
    Telecopier – 214-670-0622

    Attorney for Defendants City of Dallas
    and the Board of Adjustment

**CERTIFICATE OF SERVICE**

I certify that on the 24th day of July 2009, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the following attorney of record who has consented in writing to accept this Notice as service of this document by electronic means.

Jason Mathis, Esq.
Cowles & Thompson, P.C.
901 Main Street, Suite 4000
Dallas, Texas 75202

s/ *Christopher J. Caso*
Christopher J. Caso
